# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH RANDALL,<br><br>            Plaintiff,<br><br>      vs.<br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>            Defendant. | ) 1:11cv01528 LJO DLB<br>)<br>) FINDINGS AND RECOMMENDATIONS<br>) REGARDING PLAINTIFF'S SOCIAL<br>) SECURITY COMPLAINT<br>)<br>)<br>)<br>)<br>) |

## BACKGROUND

Plaintiff Deborah Randall ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her applications for disability

insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social

Security Act.  The matter is currently before the Court on the parties' briefs, which were

submitted, without oral argument, to the Magistrate Judge for Findings and Recommendations to

the District Court.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed her applications in April 2007, alleging disability since March 20, 2006,

due to back problems, carpal tunnel syndrome (CTS"), tendinitis, fibromyalgia and

1

2

3

4

5

6

endometriosis.  AR 146-153, 154-161, 174-180.  After the applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 60-68, 69, 70, 94-95.  On November 17, 2009, ALJ James Berry held a hearing in Fresno, California.  AR 30-59.  He issued a decision denying benefits on January 8, 2010.  AR 15-23.  On June 22, 2011, the Appeals Council denied review.  AR 1-7.

7

Hearing Testimony

8

9

10

ALJ Berry held a hearing on November 17, 2009, in Fresno, California.  Plaintiff appeared with her attorney, Jeffrey Milam.  Vocational expert ("VE") Thomas Dachelet also appeared and testified.  AR 30.

11

12

13

14

15

16

17

18

Plaintiff testified that she was 39 years old at the time of the hearing.  She lives with her husband and has two children that live outside of the home.  Plaintiff has a driver's license and drives about once a month.  AR 35-36.  Plaintiff graduated from high school and completed two years of college, but did not receive a degree.  She received an administrative certification to work in a residential care facility.  AR 36-37.  Plaintiff worked in two residential care facilities but stopped in 2007 after she had a hysterectomy and back surgery, and began suffering from fibromyalgia and carpal tunnel.  AR 37-38.

19

20

21

22

23

24

Plaintiff testified that she was 5'3" tall and weighed about 179.  She has gained weight because of her fibromyalgia and depression.  AR 37-38.  She explained that fibromyalgia causes pain in her entire body, dizziness, nausea and "memory fog."  AR 38-39.  She also suffers from fatigue and can no longer go on trips or do anything with her husband.  AR 39.  CTS causes numbness and weakness in both hands.  AR 41-42.  Plaintiff drops things and has to rest after using her hands for 15 minutes.  AR42.

25

26

27

Plaintiff has also suffered from depression for the past two years, brought on by back pain and fibromyalgia.  AR 42.  She testified that her depression has gotten worse and that she's now having auditory and visual hallucinations.  AR 43.  She also cries a lot more.  AR 44.

28

Plaintiff cannot keep up with her husband when they're outside of the house, which is making her depressed and causing marital problems.  AR 45.  Plaintiff mostly stays at home and no longer socializes with friends.  She has trouble concentrating and thought that she could concentrate for about 15 minutes before losing track.  AR 45-46.

Plaintiff thought that she could stand for one hour and sit for one hour.  She lies down most of the day.  When she gets up to try and do little things around the house, she has to go lie down after 15 minutes.  She estimated that she lies down about four hours in an eight hour day.  AR 47.  Plaintiff thought that she could walk for 15 minutes at a time and could lift a gallon of milk.  AR 47, 51.

Even without the physical problems, Plaintiff thought that her mental problems would keep her from working.  She is able to take care of herself around the house, but sometimes needs her husband to help because of dizziness.  AR 47.  She tries to do things around the house, and estimated that she spends about an hour a day doing chores.  AR 49.

Plaintiff was taking pain medications and medications for depression.  AR 51.  She testified that the pain medication really only works when she's lying down and wears off quickly when she performs activities.  Her medications cause dizziness and headaches.  AR 52.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person could lift and carry 20 pounds occasionally, 10 pounds occasionally, stand, walk and sit for six hours each, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  This person could not climb ropes, ladders or scaffolds, but could frequently handle and finger with the dominant right upper extremity.  This person could perform simple, repetitive tasks, maintain attention, concentration, persistence and pace, relate to and interact with others, adapt to usual changes in the work setting, and adhere to safety rules.  The VE testified that this person could not perform Plaintiff's past work but could perform the positions of bagger, garment sorter and grader.  AR 53-55.

1
2
3
4
5
6

For the second hypothetical, the ALJ asked the VE to assume that this person could carry a gallon of milk, or approximately eight pounds, stand and sit for one hour and walk for one and a half to two hours.  This person would have difficulty maintaining concentration and attention and could only use the upper extremities 15 minutes at a time.  This person would need rest breaks totaling four hours per day.  The VE testified that this person could not work.  AR 55-56.

7
8
9

Plaintiff's attorney asked the VE to assume the limitations in the first hypothetical and add an inability to perform simple, repetitive tasks.  The VE testified that the person could not work.  AR 56-57.

10
11
12

Referring to the first hypothetical again, Plaintiff's attorney asked the VE to assume that there would be even less than occasional use of the hands for reaching, handling, fingering, pushing, pulling and grasping.  The VE testified that this person could not work.  AR 57.

13
14

Finally, Plaintiff's attorney asked the VE to add a need to lie down for over two hours per day to the first hypothetical.  The VE testified that this person could not work.  AR 57.

15

Medical Record

16
17
18
19

In March 2006, Plaintiff underwent a partial hysterectomy.  Treatment notes from Jill Mason, M.D., indicate that she had further surgery in August 2006 and complained of lower abdominal pain in September 2006.  Plaintiff has a history of severe endometriosis.  AR 234.

20
21
22

On December 9, 2006, Plaintiff saw Soad Khalifa, M.D., for a psychiatric evaluation.  She complained of physical impairments and related depressive symptoms, including nervousness and anxiety.  Plaintiff was taking Prozac and Valium.  AR 241-242.

23
24
25
26

On examination, Plaintiff walked slowly, with a cane, and seemed to be in mild pain because of her back.  Thought content was mainly about her pain, nervousness and depressive symptoms.  Her mood was dysphoric and her affect was sometimes tearful.  Plaintiff's immediate memory was intact, but recent memory and remote memory were impaired.  Her fund

27
28

1
2
3

of knowledge was poor and concentration was impaired.  Plaintiff's abstract thinking was also

impaired but judgment and insight were intact.  Persistence and pace were good.  AR 242-243.

4

Plaintiff reported that she could not do any house work because of pain and just watches

5

television.  She reported no social activities or hobbies.  Dr. Khalifa diagnosed major depressive

6

disorder, recurrent and noted a GAF of 55.  He believed that her condition would be the same in

7

12 months.  Dr. Khalifa opined that Plaintiff would have difficulty remembering and carrying out

8

simple instructions and would have restrictions of daily activities and social functioning because

9

of pain, weakness, numbness, depressive symptoms, nervousness, anger, low energy and

10

difficulty walking.  Dr. Khalifa believed that Plaintiff would benefit by increasing, or changing,

11

her antidepressant and from pain management and supportive therapy.  AR 243-244.

12

An MRI of Plaintiff's lumbar spine taken on December 7, 2006, revealed early

13

degenerative disc disease at L4-5 with associated disc bulging.  AR 532.

14

On January 30, 2007, Plaintiff was seen by Mitchell F. Fung, M.D., for evaluation of

15

diffuse joint pain.  On examination, she had 14 out of 18 tender points.  Dr. Fung diagnosed

16

fibromyalgia and referred Plaintiff to chronic pain management.  He encouraged her to minimize

17

use of dependence-producing medications and exercise daily.  AR  526-527.

18

On February 6, 2007, Dr. Mason completed a Questionnaire and explained that Plaintiff

19

could not work due to chronic pelvic pain.  Dr. Mason listed Plaintiff's other impairments as

20

CTS and low back pain.  During an eight hour day, Dr. Mason opined that Plaintiff could sit for

21

30 minutes and stand/walk for 10 minutes.  She needed to lie down for six hours after any

22

activity and could not use her right hand due to CTS.  Plaintiff could lift five pounds frequently

23

and occasionally, but could not use her hands for reaching, handling, feeling, pushing or pulling.

24

Dr. Mason believed that Plaintiff has had these limitations since March 20, 2006.  AR 563-564.

25

On February 22, 2007, Plaintiff saw Physical Therapist Andrea Farber-Dezubiria for a

26

physical therapy evaluation.  Plaintiff complained of pain all over except her right arm, with

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

intermittent finger numbness in all fingers.  She reported that this began five to six years ago, but worsened in the past year.  Signs and symptoms were consistent with fibromyalgia with deconditioning, balance loss and poor activity tolerance.  Plaintiff was placed in the chronic pain program.  AR 523-524.

In February, March and April 2007, Plaintiff participated in a chronic pain group.  AR 495, 517, 521.

On April 11, 2007, Plaintiff was seen in neurology with complaints of right hand and bilateral toe numbness.  After a full examination that showed weakness in her fingers, Don M. Yoshimura, M.D., explained that her EMG suggested mild right CTS, though this did not explain all pain or decreased movement.  He believed it may all be related to her fibromyalgias, though the degree of pain and limitation of movement was atypical.  Dr. Yoshimura recommended continuing conservative treatment for her right CTS.  AR 491-492.

Plaintiff underwent lumbar fusion in May 2007 to correct severe degenerative disc disease at L4-5.  AR 467, 471-474.

On July 11, 2007, Plaintiff was seen in the neurosurgical clinic.  She reported that she was doing better with minimal pain, although she indicated that bending over to pick things up caused pain in her lower back.  On examination, strength was 5/5 and sensation was grossly intact in the lower dermatomes.  Keith B. Quattrocchi, M.D., indicated that Plaintiff was doing quite well.  AR 456.

On September 10, 2007, State Agency physician R. D. Fast completed a Physical Residual Functional Capacity Assessment.  Dr. Fast opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about six hours and sit for about six hours.  Plaintiff could occasionally climb ramps and stairs but could never climb ladders, ropes or scaffolds.  She could occasionally balance, stoop, kneel, crouch and crawl due

1

2

3       to chronic fibromyalgia.  Plaintiff was limited to frequent light handling and fingering with the

4       right hand due to CTS.  AR 425-430.

5               Plaintiff saw Raj Banka, M.D., on September 28, 2007, and complained of numbness in

6       both upper arms and her left leg.  She also complained that her sleep was poor and the valium

7       was not working.  There were no neurological findings on examination.  Dr. Banka diagnosed

8       chronic pain syndrome, peripheral neuropathy, lumbosacral radiculopathy, fibromyalgia and

        depression.  AR 449-450.

9               On October 2, 2007, Dr. Mason wrote a letter explaining that Plaintiff has chronic pelvic

10      pain, the cause of which was unclear.  Dr. Mason also indicated that Plaintiff has significant pain

11      from low back problems, peripheral neuropathy, and CTS.  Dr. Mason supported her petition for

12      permanent disability.  AR 572.

13              Plaintiff returned to Dr. Banka on October 10, 2007, and complained of constipation and

14      abdominal pain.  Plaintiff's abdominal examination was normal, there was no edema in her

15      extremities and there were no focal neurological findings.  Dr. Banka diagnosed rectal bleeding,

16      abdominal pain, chronic pain syndrome, stable fibromyalgia with no new symptoms, stable

17      chronic osteoarthritis with no new symptoms, stable peripheral neuropathy with no new

18      symptoms and stable pelvic pain.  Dr. Banka also noted that due to multiple medical problems

19      and chronic pain, Plaintiff could not work and would be applying for permanent disability.  AR

20      445-446.

21

22              Dr. Banka also completed a Questionnaire on October 10, 2007, and opined that Plaintiff

23      could sit for four hours during an eight hour day and stand/walk for four hours a day.  AR 565-

24      566.

25              On November 7, 2007, Plaintiff saw Jacob H. Colarian, M.D., in consultation, and

26      complained of constipation, chronic back pain and chronic abdominal cramping.  Plaintiff's

27      abdominal examination was normal.  Dr. Colarian diagnosed constipation due to medication,

28

pelvic floor dysfunction, chronic pain and fibromyalgia.  He needed to rule out "IBD or chrons," discussed a colonoscopy and told Plaintiff to begin taking glycolax daily.  AR 439-442.

On November 14, 2007, Plaintiff returned to Dr. Banka for back pain.  She reported doing well initially after surgery but then developing recurrent back pain.  On examination, Plaintiff had 5/5 strength throughout and x-rays showed the screws to be in good position.  Dr. Banka recommended further x-rays and an MRI.  AR 434.

On December 11, 2007, Plaintiff underwent a Mental Health Assessment and complained of depression for the past few years.  On mental status examination, Plaintiff was tearful and her mood was depressed and anxious.  Plaintiff's attention was normal but her concentration was impaired.  Recent and remote memory was intact and she had good judgment and control.  Tamika Sanders-Hayes, Ph.D., found that Plaintiff presented with major depressive disorder secondary to medical problems and chronic pain.  AR 567-571.

On February 8, 2008, State Agency physician Evangeline Murillo, M.D., completed a Psychiatric Review Technique Form and concluded that an RFC assessment was necessary.  In assessing Plaintiff's limitations, Dr. Murillo opined that Plaintiff had mild limitations in activities of daily living, maintaining social functioning and maintaining concentration.  AR 546-556.  In a Mental Functional Capacity Assessment completed the same day, Dr. Murillo opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions.  Plaintiff could understand, remember and carry out simple instructions over an eight hour workday and 40 hour workweek.  She could relate to co-workers, supervisors and the public and could adapt to common changes associated with unskilled work.  AR 560-562.

On February 20, 2008, Plaintiff saw Dr. Sanders-Hayes and reported continued chronic pain and explained that she was struggling with the discrepancy between her independence and

what she used to be able to do before her back surgery.  Plaintiff was depressed and anxious and her concentration was impaired.  Her GAF was 51-60.  AR 612-613.

Plaintiff returned to Dr. Sanders-Hayes on March 12, 2008.  She was agitated and angry about her disability denials and explained that she wanted to work if her pain would subside.  On examination, her mood was depressed, anxious and angry.  Her attention was distractible and her concentration was impaired.  Plaintiff's GAF was 51-60, which indicated moderate symptoms. AR 607-608.

On April 24, 2008, Plaintiff saw Huiwen Hao, M.D., for a psychiatric examination.  On examination, Plaintiff's attention was normal and her mood was depressed and dysphoric. Insight and judgment were good.  Dr. Hao diagnosed major depressive disorder and noted that medical factors were affecting her mental status.  Plaintiff's GAF was 61-70, which indicated mild symptoms.  Dr. Hao changed her prescriptions and prescribed therapy.  AR 597-600.

On April 25, 2008, Plaintiff returned to Dr. Sanders-Hayes and reported that the increased medications had been helpful in decreasing her depression, though she was still in significant pain.  Her mood was depressed and anxious and her concentration was impaired. Plaintiff's GAF was 61-70.  AR 602-603.

Plaintiff returned to Dr. Hao on October 17, 2008.  She reported a better mood but thought that nightmares were caused by her medication.  She also complained of auditory and visual hallucinations.  On examination, Plaintiff's attention was normal and her mood was neutral.  Insight and judgment were good.  Dr. Hao diagnosed major depressive disorder and noted that medical factors were affecting her mental status.  Plaintiff's GAF was 61-70.  AR 590-591.

Plaintiff returned to Dr. Hao on May 6, 2009.  She reported feeling better with Celexa, though she still had sleep problems.  Plaintiff also reported "brain explosive disorder," where she hears voices in her head once in a while.  On examination, Plaintiff's mood was better and she

was fully-oriented.  Insight and judgment were good and attention was normal.  Dr. Hao

diagnosed major depressive disorder and noted that medical factors were affecting her mental

status.  Plaintiff's GAF was 65-75.  Dr. Hao adjusted Plaintiff's medications.   AR 585-586.

On November 9, 2009, Dr. Banka completed a Questionnaire in which he indicated that

Plaintiff could not work and suffered from back pain, fibromyalgia, chronic pain syndrome and

depression.  She could not sit, stand, walk, lift or use her hands.  AR 633-635.

*Evidence Submitted to the Appeals Council*

Plaintiff underwent an electromyogram and nerve conduction study test on September 3,

2010.  The testing was abnormal and suggested bilateral CTS, milder on the left.  Treatment

notes indicate that relief was incomplete with wrist splints and that she would consider surgery.

AR 635.

On September 3, 2010, Plaintiff was examined by Jonathan Wiens, M.D.  Dr. Wiens

explained that he had treated Plaintiff since 2006 for pain problems and that her physical

examination findings have been consistent over time.  Plaintiff had decreased range of motion,

tenderness, pain and spasm in her lumbar spine.  Her gait was abnormal as she guarded her back

and hips.  Her sensory examination consistently shows some hypesthesia over the L4/L5

dermatomes bilaterally, but this is better since her back surgery.  Plaintiff had tenderness

consistently in her neck and mid/lower back paraspinal muscles, as well as the upper and middle

trapezius and other areas.  AR 640.

Dr. Wiens diagnosed chronic pain and noted Plaintiff's failed back, pelvic pain from

endometriosis, fibromyalgia with widespread trigger points, CTS, ongoing shoulder

impingement, and major depression.  A multidisciplinary chronic pain program failed, as have

many medications.  Plaintiff was currently taking methadone, oxycodone and medication for

depression.  Dr. Wiens opined that Plaintiff could not do any bending, twisting, lifting or

carrying.  She was also prohibited from prolonged sitting or standing and her medications

interfered with her concentration.  Dr. Wiens explained that although it appeared Plaintiff could

perform work for a few hours in an easy/light job, flare-ups and "bed-bound" status for a day or

two after fairly easy activities shows that she cannot consistently work.  Dr. Wiens concluded by

opining that Plaintiff was totally and permanently disabled.  AR 640-641.

Sleep study results dated March 3, 2011, indicate that Plaintiff has severe sleep apnea.

AR 644.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of depressive disorder,

degenerative disc disease, endometriosis, CTS and fibromyalgia.  Despite these impairments,

Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds

occasionally, 10 pounds frequently, sit, stand and/or walk for six hours each, occasionally climb

ramps and stairs, balance, stoop, kneel, crouch and crawl and frequently handle and reach.

Plaintiff could not climb ladders, ropes or scaffolds.  She could perform simple, repetitive tasks,

maintain attention, concentration, persistence and pace, relate to and interact with others, adapt

to usual changes in work settings and adhere to safety rules.  AR 20-22.  With this RFC, Plaintiff

could not perform her past relevant work but could perform a significant number of jobs in the

national economy.  AR 24-25.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision

to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

the Court must determine whether the decision of the Commissioner is supported by substantial

evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv*., 812 F.2d 509, 510 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability and (2) has an impairment or a combination of impairments that is considered "severe" (depressive disorder, degenerative disc disease, endometriosis, CTS and fibromyalgia) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) did not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix

1, Subpart P, Regulations No. 4; (4) could not perform her past relevant work, but (5) could

perform a significant number of jobs in the national economy.  AR 20-25.

Here, Plaintiff argues that (1) the ALJ did not give sufficient reasons to reject the

opinions of Dr. Khalifa and Dr. Mason; and (2) the new evidence submitted to the Appeals

Council merits payment, or at least remand.

**DISCUSSION**

A.      Analysis of the Medical Evidence

Plaintiff first argues that the ALJ failed to give sufficient reasons to reject Dr. Khalifa's

December 9, 2006, opinion, and Dr. Mason's February 6, 2007, opinion.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

physicians).  As a general rule, more weight should be given to the opinion of a treating source

than to the opinion of doctors who do not treat the claimant.  *Orn v. Astrue*, 495 F.3d 625, 631

(9th Cir.2007); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating

doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and

convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).  Even if the

treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this

opinion without providing "specific and legitimate reasons" supported by substantial evidence in

the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the

opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990);

*Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating

physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion

of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

1.      *Dr. Khalifa's Opinion*

The ALJ's RFC found that Plaintiff could perform simple, repetitive tasks, maintain attention, concentration, persistence and pace, relate to and interact with others, adapt to usual changes in work settings and adhere to safety rules. AR 22. In so finding, the ALJ gave substantial weight to the opinion of State Agency physician Dr. Murillo and little weight to the opinions of examining physician Dr. Khalifa and treating physician Dr. Banka.

According to the ALJ, he rejected Dr. Khalifa's opinion that Plaintiff would have difficulty with simple instructions "because the conclusion is inconsistent with the examination findings." AR 24. It is not clear, however, that inconsistencies exist. For example, while Plaintiff's immediate memory was intact, her recent memory was impaired and she could

remember one out of three objects after a few minutes.  Her remote memory was also impaired,

as she "remembered only Bush, then Carter, then Nixon."  Plaintiff's fund of knowledge was

poor and she did her serial 3s slowly.  Dr. Khalifa found that Plaintiff's concentration was

impaired because she could not spell backwards.  Her abstract thinking was also impaired.  AR

243.  The ALJ did not point to any specific inconsistencies, and without further explanation, the

Court cannot conclude that his reasoning was legitimate in light of Dr. Khalifa's examination

findings.[1]

In his opposition, Defendant points to Dr. Khalifa's findings that Plaintiff was

cooperative, had good speech, was alert and oriented and had intact judgment.  While Dr.

Khalifa did make these findings, they are not as relevant to Plaintiff's ability to perform simple

tasks as those memory and concentration findings described above.  Indeed, this illustrates why

the ALJ could not simply conclude that Dr. Khalifa's opinion was not supported without further

explanation.

Defendant also notes, correctly, that the ALJ cited the mild examination findings of Dr.

Hao and Dr. Sanders-Hayes.  However, the ALJ did not cite their findings in rejecting Dr.

Khalifa's opinion, but rather noted the findings in rejecting Dr. Banka's opinion that Plaintiff

was completely unable to work.

Accordingly, the ALJ did not set forth specific and legitimate reasons for rejecting Dr.

Khalifa's opinion.

2.      *Dr. Mason's Opinion*

In determining Plaintiff's physical RFC, the ALJ adopted the opinion of State Agency

physician Dr. Fast, who opined that Plaintiff could perform light work with various postural

---

[1] The Court notes that Dr. Khalifa did not specify the level of difficulty, i.e., mild or moderate, that Plaintiff would
have with simple tasks.  It appears from the ALJ's analysis that he assumed that the opinion meant that Plaintiff
could not perform simple tasks, though this may not have been Dr. Khalifa's intended conclusion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

limitations.  The ALJ therefore rejected the opinions of treating physicians Dr. Mason and Dr. Banka.

The ALJ rejected Dr. Mason's opinion that Plaintiff could not work because of chronic pelvic pain, low back pain and CTS because the opinion was given prior to Plaintiff's May 2007 fusion surgery.  AR 23.  The ALJ noted earlier that Plaintiff had a "positive response to lumbar surgery" and his reasoning for rejecting Dr. Mason's opinion reflects this belief.  AR 23.  The ALJ's analysis, however, is controverted by Dr. Mason's October 2, 2007, letter.  The letter, written almost five months *after* surgery, indicates that Plaintiff continued to suffer from chronic pelvic pain, significant low back pain, peripheral neuropathy, and CTS.  AR 572.  The ALJ's conclusion is also undermined by Plaintiff's report to Dr. Banka in November 2007, when she explained that she did well after surgery initially, but that she was again suffering from recurrent back pain.  AR 434.  Plaintiff continued to complain of significant back pain throughout 2008 and 2009 and was continually diagnosed with chronic pain syndrome.

The ALJ further explains that he rejected Dr. Mason's opinion that Plaintiff could not work because of pelvic pain because "it is inconsistent with the treatment notes."  AR 23.  The ALJ again fails to explain *how* the conclusion is inconsistent.  Indeed, there are not many treatment notes from Dr. Mason in the record, but the notes included do not necessarily indicate inconsistencies.  For example, Dr. Mason's September 18, 2006, notes indicate that Plaintiff has a history of severe endometriosis.  She had surgery in March and August 2006, but was having lower abdominal pain with radiation into her back and legs.  AR 234.  Plaintiff continued to complain of abdominal pain in October and November 2007.  AR 439, 445.

Without further explanation, the Court cannot conclude that the ALJ's treatment of Dr. Mason's opinions was proper.  Recent decisions of the Ninth Circuit have made it clear to this Court that an ALJ must, in deference to the position of a treating physician, do more than state generic, conclusory reasons for rejecting the opinions.  The Ninth Circuit has also reiterated that

16

the Court cannot rely on reasoning not specifically cited by the ALJ.  In recognizing these

principles, the Court is not also suggesting that the claimant is disabled.  Rather, the Court is

simply requiring the ALJ to meet his burden under the law.

For these reasons, the ALJ did not set forth specific and legitimate reasons for rejecting

Dr. Mason's opinion.

B.      New Evidence

Finally, Plaintiff argues that the September 3, 2010, opinion of Dr. Wiens, submitted to

the Appeals Council, warrants remand.

The parties disagree as to whether the fact that the evidence was before the Appeals

Council, by itself, makes the evidence reviewable by this Court.  Defendant suggests that the

evidence must also meet the requirements of sentence six of 42 U.S.C. § 405(g) to warrant

discussion by this Court.  In other words, even though the Appeals Council considered the

evidence and rejected it, Defendant believes that Plaintiff must show (1) that the evidence was

material; and (2) good cause for failing to present the evidence to the ALJ.  42 U.S.C. § 405(g).

Based on a recent Ninth Circuit decision, Defendant's position is incorrect.

Subsequent to the parties' briefing, the Ninth Circuit rejected Defendant's argument in

*Brewes v. Commissioner*, 682 F.3d 1157 (9th Cir. 2012).  The Ninth Circuit explained:

> We are persuaded that the administrative record includes evidence submitted to
> and considered by the Appeals Council.  The Commissioner's regulations permit
> claimants to submit new and material evidence to the Appeals Council and require the
> Council to consider that evidence in determining whether to review the ALJ's decision,
> so long as the evidence relates to the period on or before the ALJ's decision.  *See* 20
> C.F.R. § 404.970(b).  Claimants need not show "good cause" before submitting new
> evidence to the Appeals Council.  *See id.; see also O'Dell,* 44 F.3d at 858.  The Council
> will grant the request for review "if it finds that the administrative law judge's action,
> findings, or conclusion is contrary to the weight of the evidence *currently of record.*" 20
> C.F.R. § 404.970(b) (emphasis added).  "Because the regulations require the Appeals
> Council to review the new evidence, this new evidence must be treated as part of the
> administrative record." *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996).

1

2

*Brewes v. Commissioner*, 682 F.3d at 1162.  The Court concluded, "[w]e hold that when the

3

Appeals Council considers new evidence in deciding whether to review a decision of the ALJ,

4

that evidence becomes part of the administrative record, which the district court must consider

5

when reviewing the Commissioner's final decision for substantial evidence." *Id.* at 1163.  In

6

specifically rejecting Defendant's argument, the Court explained:

7

> First, we do not agree with the Commissioner's contention that Brewes must show that
> the letter meets § 405(g)'s materiality standard.  Section 405(g) materiality is not at issue

8

> here because that standard applies only to new evidence that is not part of the
> administrative record and is presented in the first instance to the district court.  *See* 42

9

> U.S.C. § 405(g) ("The [district] court may ... at any time order additional evidence to be

10

> taken before the Commissioner, ... but only upon a showing that there is new evidence
> which is material and that there is good cause for the failure to incorporate such evidence

11

> into the record in a prior proceeding.").  As discussed above, evidence submitted to and
> considered by the Appeals Council is not new but rather is part of the administrative

12

> record properly before the district court.  Here, the Appeals Council accepted Brewes'

13

> proffered new evidence and made it part of the record, apparently concluding that it was
> material within the meaning of 20 C.F.R. § 404.970(b).  The Commissioner does not

14

> contend that the Council erred by considering this additional evidence.

15

*Id.* at 1164.

16

17

      Here, when considering the record as a whole, including Dr. Wien's opinion, the Court

18

finds that the ALJ's decision was not supported by substantial evidence.  Although the Appeals

19

Council did not give the opinion any weight because it "did not include rationale, objective

20

findings, or other information to support this statement," Dr. Wien's opinion provides additional

21

evidence, from a treating source, of Plaintiff's ongoing medical issues.  For example, the ALJ

22

rejected Dr. Mason's opinion in part because it was written before Plaintiff's back surgery, a

23

surgery that the ALJ deemed successful.  Dr. Wien, however, provides a detailed, thorough

24

explanation of Plaintiff's back pain after her surgery.  AR 640-643.  Dr. Wien also provides a

25

detailed account of Plaintiff's pelvic pain, an issue that the ALJ also raised in rejecting Dr.

26

Mason's opinion.

27

28

Accordingly, based on the evidence presented to the Appeals Council, the Court finds that the ALJ's conclusion was not based on substantial evidence and free of legal error.

C.      Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, in light of the fact that the ALJ did not adequately explain his analysis of the medical opinions and did not consider Dr. Wien's opinion, the Court finds that remand for further proceedings is appropriate.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence.  Accordingly, this Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED and that the matter be REVERSED and REMANDED for further proceedings consistent with this opinion.

These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 631(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court,

Eastern District of California.  Within **fourteen (14) days** after being served with a copy, any party may serve on opposing counsel and file with the court written objections to such proposed findings and recommendations.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within **fourteen (14) days** after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED.

Dated:    **July 30, 2012**                          /s/ *Dennis L. Beck*
                                        UNITED STATES MAGISTRATE JUDGE